J. RANDALL JONES, ESQ., SBN 1927
r.jones@kempjones.com
SPENCER H. GUNNERSON, ESQ., SBN 8810
s.gunnerson@kempjones.com
CHAD ARONSON, ESQ., SBN 14471
c.aronson@kempjones.com
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| K AND K PROMOTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> WALT DISNEY STUDIOS MOTION PICTURES; PIXAR; and DISNEY STORE USA, LLC, <br><br> Defendants. | Case No.: 2:20-cv-01753-JCM-NJK <br><br> **REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

Plaintiff K and K Promotions, Inc. ("K&K"), by and through its counsel of record, hereby submit the following Reply in Support of the Motion for Leave to File a Second Amended Complaint (the "Proposed Amended Complaint").

**I.**

**Introduction**

This suit centers upon Disney-Pixar's knowing and willful appropriation and infringement of intellectual property associated with the legendary daredevil, Evel Knievel, and owned by K&K at all times relevant to this suit. At the time this suit was filed, K&K was informed and believed that Disney-Pixar stealthily exploited the likeness and trade dress of Evel Knievel in promoting *Toy Story 4* and concurrently marketing and selling toy merchandise. While discovery has proven this true, what was known at the time of the filing of the complaint only accounts for

1

1 half of the story.  In actuality, and as pleaded in K&K's proposed Amended Complaint, Disney
2 Pixar knowingly exploited the name "Evel Knievel," for commercial purposes, to wit by
3 authorizing public statements, both orally and in press releases to solicit ticket sales for the film
4 *Toy Story 4*, to solicit contracts for merchandising and toy licensee-licensor relationships, among
5 others.  Because K&K was only able to discover these revelations past the deadline to amend the
6 pleadings and because they spell out meritorious claims for relief *in addition* to K&K's existing,
7 well-pleaded claims, Rule 16 supports granting K&K leave to amend.

8 　　　　In Opposition, Disney-Pixar says little about the Rule 16 inquiry, instead treating its brief
9 as a thinly veiled motion to dismiss, or even a motion for summary judgment.  On the Rule 16
10 question, Disney-Pixar makes no sound argument for defeating K&K's good faith and excusable
11 neglect in seeking amendment.  Nor does Disney-Pixar articulate any prejudice, other than the
12 oft-repeated, routinely rejected complaint that amendment would force it to litigate well-pleaded
13 allegations on the merits.  And with respect to Disney-Pixar's futility arguments, Disney-Pixar
14 conveniently characterizes K&K's new allegations as amounting to mere "internal" utterances of
15 the name Evel Knievel among friends, and otherwise mere statements of tribute, akin to publicly
16 promoting a real-life docudrama about the life of Knievel.  Disney-Pixar's election to spend most
17 of its brief beating down these strawmen does nothing to demonstrate futility.

18 　　　　Discovery in this matter has been extended by 120 days *at Disney-Pixar's insistence*. See
19 Stipulation to Extend Discovery at 4:1-9, ECF No. 37.  Disney-Pixar elected to produce the salient
20 records that brought about this Motion for Leave after the deadline to amend the pleadings.  In
21 fact, Disney-Pixar has still yet to produce documents in response K&K's request for press releases
22 and public writing promoting Duke Kaboom, documents which will likely only lend more support
23 to the allegations set forth in the proposed Amended Complaint.  K&K submits that permitting
24 amendment *now*, rather than awaiting Disney-Pixar's piecemeal production of additional adverse
25 evidence, will serve the ends of efficiency and result in absolutely no prejudice to Disney-Pixar.
26 / / /
27 / / /
28 / / /

## II.

## Argument

**A.  Discovery of new material evidence supporting meritorious claims—produced belatedly after the deadline to amend the pleadings—constitutes a text-book example of good faith *and* excusable neglect.**

Disney-Pixar dedicates less than a page to the Rule 16 question before this Court. *See* Opp'n to Mot. for Leave at 6:14-7:9, ECF No. 44. It appears Disney-Pixar argues that Plaintiff's Motion should be denied for failure to use the words "excusable neglect," and, more bafflingly, because K&K did not gratuitously invite Disney-Pixar to stipulate to the filing of an amended complaint. *See id.* Neither of these assertions warrant much discussion.

Plaintiff's good cause, the discovery of new evidence, and excusable neglect, the inability to have sought amendment sooner, are both more than established in the underlying Motion. *See* Mot. for Leave at 3:7-4:18. Disney-Pixar's "smoking gun"—K&K's failure to use the phrase "excusable neglect"—simply elevates form over substance. Nevertheless, and in an abundance of caution, K&K reiterates its good cause and excusable neglect analysis as follows: (1) there is no danger of prejudice to Disney-Pixar given the newly discovered evidence that is the subject of this Motion has been known and in Disney-Pixar's possession at all relevant times; (2) the Court's extension of discovery deadlines by 120-days minimizes any potential delay on these proceedings; (3) the delay in bringing this Motion is entirely based on K&K's discovery of new information produced by Disney-Pixar *after* the deadline to amend the pleadings; and (4) there is nothing to refute K&K's good-faith efforts in seeking amendment to preserve its right to recover on theories that could not have been identified earlier in these proceedings. K&K's Motion more than establishes the foregoing, consistent with *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004).

With respect to Disney-Pixar's complaint about the lack of a meet-and-confer, no such requirement governs motions for leave to amend.[1] While K&K is delighted to hear Disney-Pixar

---

[1] LR 26-6(c) only applies to "[d]iscovery motions," for which a meet-and-confer conference is required along with a declaration stating the "details and results of the meet-and-confer conference ***about each disputed discovery request***." (emphasis added).

3

1  would have simply stipulated to an amendment, Disney-Pixar's lengthy, vociferous Opposition
2  suggests otherwise.

3      **B.    Disney-Pixar admits the only basis for prejudice is its irritation with having to defend
4  this action on the merits, an argument routinely rejected as inapposite.**

5      Disney-Pixar next complains of prejudice, but only cites its disappointment in having to
6  litigate this case on the merits and its apparent frustration with this Court's case management.  Of
7  course, having to expend time and energy in defending a suit is not a valid basis for prejudice.
8  *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001) ("Appellants
9  cite no cases holding that prejudice should be measured by litigation expenses incurred before a
10 motion to amend is filed"); *see, e.g.*, *Kyllonen v. GNC Franchising*, LLC, 2019 WL 2492272, at
11 *5 (D. Nev. June 13, 2019) ("[R]equiring a plaintiff to adjudicate a claim on the merits does not
12 constitute prejudice"); *Tasty One, LLC v. Earth Smarte Water, LLC*, No. 220CV01625APGNJK,
13 2021 WL 966014, at *1 (D. Nev. Mar. 15, 2021) ("Plaintiff . . . cites no cases holding that
14 prejudice should be measured by litigation expenses incurred while adjudicating the merits of a
15 counterclaim or third-party complaint."); *Guerrero-Madrid v. Fed. Home Loan Mortg. Corp.*, No.
16 2:13-CV-00432-RFB, 2015 WL 1569061, at *2 (D. Nev. Mar. 26, 2015) ("[T]his prejudice—to
17 the extent that being forced to litigate on the merits can be considered prejudicial—is minimal
18 given the fact that even if the Court were to deny the extension, Plaintiff could simply refile the
19 amended complaint in a new action.").

20     Disney-Pixar then pivots to its apparent disappointment that the pending motion to dismiss
21 has yet to be ruled upon.  *See* Opp'n at 7:16-23.   K&K submits that, to the extent this argument
22 has any bearing on the instant Motion, permitting leave to amend prior to ruling on the pending
23 motion to dismiss would indeed promote judicial economy.   First, judicial economy would be
24 served by handling a single motion to dismiss pertaining to an operative complaint, rather than
25 piecemeal motions as Disney-Pixar suggests.   Second, and perhaps more importantly, K&K's
26 proposed allegations in the Amended Complaint  will assist this Court's resolution of Disney-
27 Pixar's arguments set forth in the pending motion to dismiss.   K&K submits that the new
28 allegations—illuminating the sequence of events by which Disney-Pixar deliberately and openly

4

exploited Evel Knievel's name and likeness, only to reverse course and publicly disclaim any association with Evel Knievel—significantly bolster K&K's existing claims and should be properly considered in any future adjudication of Disney-Pixar's motion to dismiss.

**C.  Disney-Pixar's futility argument implicitly employs a heighted standard of review and conveniently mischaracterizes K&K's allegations.**

Disney-Pixar presents a lengthy recitation, akin to that in a motion to dismiss or motion for summary judgment, and purports to demonstrate how K&K's claims are not actionable. Under the governing standard, "leave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense[.]'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997) (citing (*Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). While Disney-Pixar is correct that the *Twombly-Iqbal* serves as the guidepost, this does not convert K&K's entire Motion for Leave into a simple 12(b)(6) case.[2] Nevertheless, K&K's proposed Amended Complaint more than surpasses the futility and 12(b)(6) standards, and sets forth a clear entitlement to relief under NRS 597.770, *et. seq*, and the Lanham Act.

**1.  K&K's allegations establish Disney-Pixar's knowing violation of NRS 597.770, et. seq., through its deliberate commercialization of the name "Evel Knievel" to solicit sales of movie tickets and to solicit merchandising contracts.**

As with Disney-Pixar's pending motion to dismiss, Disney-Pixar arbitrarily limits the reach of NRS 597.770 without parsing the actual statutory language. A cursory review of NRS 597. 770 *et. seq.*'s expansive reach establishes K&K's allegations are well within its scope. "There is a right of publicity in the name, voice, signature, photograph or likeness of every person." NRS 597.790(1). "Any commercial use by another of the name, voice, signature, photograph or likeness of a person requires the written consent" subject to certain exceptions,

---

[2]  Futility, after all, is but one factor under a test that elevates "prejudice" as the touchstone of the inquiry. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight. Prejudice is the "touchstone of the inquiry under rule 15(a).") (citations omitted)). And on the prejudice prong, Disney-Pixar falls well short of articulating any basis for the same.

5

such as where the "use is contained in material which is commercially sponsored but the use is not directly connected with the commercial sponsorship." *Id.* § 597.790(2)(a). Importantly, "whether a use is directly connected with commercial sponsorship is a question of fact, to be determined by the trier of fact." *Id.* § 597.790(2)(g).

NRS 597.770 sets forth the definition of "commercial use": "Commercial use" ***includes*** the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods ***or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service***. *Id.* (emphasis added).

Here, K&K alleges Disney-Pixar used Evel Knievel's name publicly, in the form of press releases and statements to the press, for the purposes of soliciting the purchase of Toy Story 4 tickets. K&K further alleges Disney-Pixar used Evel Knievel's name in promotional presentations to distinct entities to solicit commercial transactions in the form of merchandise and toy licenses.

Disney Pixar's arguments to the contrary are unavailing. While Disney Pixar casts its use as mere "statements," K&K alleges Disney Pixar intentionally exploited the value of Evel Knievel's name in a variety of fora, all with the intention of profiting off of impending movie ticket sales, toys, and other merchandise. Were such uses of Evel Knievel's name to be "not actionable," as Disney Pixar urges, why would its public relations personnel command Toy Story 4 actors to avoid drawing any public comparison to Evel Knievel? *See* Proposed Am. Compl. ¶¶ 70, 91, ECF No. 40, Ex. 1.

Disney-Pixar correctly identifies K&K's allegations that it used Evel Knievel's name "for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Defendants then leap to a non-sequitur, reciting authorities dealing with films depicting real persons. Defendants miss the point. K&K does not allege *Toy Story* 4 is about Evel Knievel. K&K does allege that Disney Pixar generated vast commercial interest in *Toy Story 4* by deliberately trading off the fame of Evel Knievel, only to later, presumably after someone in their legal departments raised red flags, backtrack and publicly disclaim any association.

Regarding Disney Pixar's "internal" use of Evel Knievel, K&K brings no such claims based on the same. Disney Pixar even concedes K&K's allegations concern statements to "companies within the Disney umbrella," *i.e.*, distinct, separate entities. It strains credulity to suggest the hundreds of contracts between the hundreds of entities under the Walt Disney umbrella are merely non-commercial communications without concern for each entity's bottom line. Disney-Pixar's assumption appears to be that "commercial use" cannot contemplate solicitations for contracts and purposeful use of one's name in press releases and causing widespread distribution of the same. Use of a name to solicit purchases need not be in a traditional advertisement such as a subway ad or on an actual product, and nothing in the statute remotely suggests any such limitation. Caselaw in the right of publicity and related contexts confirm the reach of "commercial use."

In a right of publicity case from the Eastern District of California, a Court held a wireless provider's emergency preparedness widely disseminated press release was commercial speech even though it "did not directly propose any commercial transactions or offer any products or services." *Yeager v. Cingular Wireless LLC*, 673 F.Supp.2d 1089, 1098 (E.D.Cal.2009). The *Yeager* Court reasoned that the plaintiff's name and identity were "unique and non-fungible" because he was known for breaking the sound barrier for the first time, and "[t]he use of his name and identity link[ed] defendant's new technology to plaintiff's name and accomplishments" to create positive associations in customers' minds about the AT&T brand. See id. ("While the use of plaintiff's name and reference to his accomplishment was a small part of the 755–word Publication, the association of defendant's services with a historical feat is a use that may help to pique the interest of a newsman deciding whether to follow up on a press release.").

In a recent decision in this District, Judge Hicks found that a misrepresentation tort constituted commercial speech (and was therefore not barred by the First Amendment), stating: "It is irrelevant to the court's inquiry that Rimini Street's statements were not part of a classic advertising campaign because the representations still involve Rimini Street's services and were part of the informal promotion of Rimini Street's business." *Rimini Street, Inc. v. Oracle International Corp.*, No. 2:14–cv–1699–LRH–CWH, 2017 WL 4227939, at *6 (D. Nev. Sept. 22,

2017) (citing *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (holding that representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion")). Thus, in that case, dealing with a defendant's "chief marketing Officer['s] release [of] a company press release which was quoted in several different publications," was commercial in nature and therefore actionable.

The breadth of commercial speech is also confirmed by reference to similar analysis under the Lanham Act, under which mountains of caselaw discuss how commercial promotion may take many forms outside of the traditional subway ad or television spot. *See, e.g.*, *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) ("Coca–Cola's use of part or all of the presentation materials during negotiations with representatives of the eleven "cross-franchise" bottlers does not constitute merely isolated, individual statements of opinion by a single sales representative to a single customer. The presentation materials in this case were specifically developed and designed by Coca–Cola to target these independent bottlers . . . ."); *Am. Traffic Solutions, Inc. v. Redflex Traffic Sys., Inc.*, CV–08–02051, 2010 WL 1640975, at *3 (D. Ariz. April 22, 2010) ("A reasonable trier of fact could find that disseminating contract proposals to eleven governmental entities constitutes promotion in defendant's industry.").

In short, there is no statutory basis for crediting Disney-Pixar's assertion that K&K's newly proposed claims are not actionable. And caselaw construing what constitutes "commercial" use only sheds more light on Disney-Pixar's mistaken attempt to arbitrarily limit the statute's reach.

   **2.   K&K's Lanham Act claims are sufficiently pled notwithstanding Disney-Pixar's thinly-veiled summary-judgment-style arguments.**

Preliminarily, and just the same with respect to right of publicity, Disney-Pixar attacks a distorted caricature of K&K's allegations, assuming the claim is based on internal conversations among co-workers. K&K expressly alleges Evel Knievel was repeatedly and deliberately used to enter commercial contracts with *other* entities.[3] Disney-Pixar's citations to authorities

---

[3] Disney-Pixar latches onto K&K's allegation that use of Knievel's name to "companies under the Disney umbrella," and assumes this must constitutes "intra-company" use. *See* Opp'n at 10:17-11:3.

concerning mere internal uses of a mark, akin to an individual's private conversations, is simply not at issue here.

As to external uses of "Evel Knievel,"—and, again, like its right of publicity arguments—Disney-Pixar continues to distort the nature of this action and K&K's allegations. Contrary to each of Disney-Pixar's relied upon authorities, *see* Opp'n at 11:18-12:10, Disney-Pixar utilized the Knievel name in precisely the context that would lead reasonable consumers to be confused as to association and origin. And because K&K alleges a continuous publicity blitz aimed at hammering home this association in the minds of consumers, there is no basis for a finding of "nominative fair use," as Disney-Pixar suggests. And unlike *Applied Underwriters*—which Disney-Pixar points to in support of ruling on fair use at the motion-to-dismiss stage—K&K's proposed Amended Complaint is replete with examples of consumer confusion and allegations of Disney-Pixar's knowing intent to bring about that result. *Cf. Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (noting the plaintiff's complaint "contained only scant, conclusory allegations of consumer confusion").

Moreover, the *Applied Underwriters* Court confirmed the default rule that fact-intensive questions, like nominative fair use and consumer confusion, are generally not appropriate for a motion to dismiss. *See id.* (noting "it is 'a rare situation in which granting a motion to dismiss is appropriate when a case involves questions of consumer confusion . . . .'") (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). K&K's allegations here are more than sufficient to take this matter outside the bounds of the "rare situation" identified in *Applied Underwriters*. And Disney-Pixar's argument to the contrary—*asserting as fact* that its use constitutes a "[n]on-misleading comparison[]"—simply bolsters the fact-intensive nature of this inquiry and frankly holds no weight against K&K's overwhelming allegations establishing consumer confusion.

And with respect to Disney-Pixar's arguments on the infringement of the 7-inch daredevil mark, Disney-Pixar again asks this Court to make factual determinations under the guise of assessing futility. Specifically, Disney-Pixar asks this Court to find its "9-inch motorcycle daredevil" advertisement is insufficiently prominent, an accurate description of the toy, and easily

identified as a toy unaffiliated or associated with Evel Knievel. While Disney-Pixar can certainly make that argument in defense of this claim, it is not appropriate to dismiss this fact driven allegation which a jury should be allowed to assess, and thus doesn't make this allegation futile as a matter of law either.

### III.
### Conclusion

The Court should grant Plaintiff leave to file a Second Amended Complaint. Defendants say very little about the motion-for-leave inquiry, instead treating the same as a premature motion to dismiss and elsewhere a motion for summary judgment. With respect to the actual issue before this Court, Plaintiff has more than carried its burden of establishing "good cause." Defendants' Opposition, despite its impassioned verbosity, does not demonstrate otherwise.

This matter is still in discovery and, at Disney-Pixar's insistence, has been extended by 120 days due to Disney-Pixar's admitted failure to produce documents in accordance with the original scheduling order. K&K respectfully submits that discovery will yield significant evidence substantiating what is already clear from the 58,000 documents Disney-Pixar has produced, namely Disney-Pixar's deliberate campaign to commercially exploit the Knievel name by linking it to the *Toy Story 4* movie and products to intentionally cause unwarranted consumer association. Because K&K's proposed Amended Complaint more than sufficiently alleges facts to support NRS 597.770 *et seq.* and Lanham Act claims, and because amendment could not have been sought sooner, the Court should permit amendment and grant the instant Motion.

DATED this 20th day of August, 2021

    /s/ Chad R. Aronson
J. RANDALL JONES, ESQ., SBN 1927
SPENCER H. GUNNERSON, ESQ., SBN 8810
CHAD ARONSON, ESQ., SBN 14471
KEMP JONES LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
*Attorneys for Plaintiff*

**PROOF OF SERVICE**

I hereby certify that on the 20th day of August, 2021, I served a true and correct copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF THE MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** via the United States District Court's CM/ECF electronic filing system to all parties on the e-service list.

*/s/ Charmaine M. Diaz*
An employee of Kemp Jones LLP