1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

K AND K PRODUCTIONS, INC.,

8                                    Plaintiff(s),

9          v.

10   WALT DISNEY STUDIOS MOTION
     PICTURES, et al.,

11

12                                   Defendant(s).

Case No. 2:20-CV-1753 JCM (NJK)

ORDER

13

14          Presently before the court is defendants Walt Disney Studios Motion Pictures Group,

15   PIXAR, and Disney Store USA, LLC's (collectively "Disney") motion to dismiss. (ECF No.

16   23).   Plaintiff K and K Promotions, Inc. ("K&K") responded in opposition to Disney's

17   motion to dismiss (ECF No. 27) to which Disney replied (ECF No. 28).

18          Also before the court is K&K's motion for leave to file a second amended complaint

19   (ECF No. 41). Disney responded in opposition to K&K's motion for leave to file a second

20   amended complaint (ECF No. 44) to which K&K replied (ECF No. 45).

21          Also before the court is K&K's motion to seal its motion for leave to file a second

22   amended complaint (ECF No. 39).

23   **I.       BACKGROUND**

24          Evel Knievel was a motorcycle daredevil beginning in the 1960's and into the early

25   1980's. (Am. Compl., ECF No. 18 ¶¶ 16, 24). He set multiple world records and captivated

26   audiences with his death-defying jumps and spectacular falls like his failed jump over the

27   fountain at Caesars Palace in 1967. (*Id.* ¶ 21). "America's premier stuntman" gained famed

28   for his "iconic wardrobe: a white jumpsuit embellished only by star-spangled red, white, and

James C. Mahan
U.S. District Judge

blue patriotic insignia with a matching white cape and helmet and a motorcycle adorned by red, white, and blue colors." (*Id.* ¶ 20).

"In 1973, Ideal Toys released the Evel Knievel Stunt Cycle, a toy which features a doll of Evel Knievel in his signature…jumpsuit and matching helmet."   (*Id.* ¶ 26).  Additionally, the toy came with a red "energizer", which wound up the toy to be released. (*Id.*).

K&K owns intellectual property and publicity rights for Evel Knievel, which includes trademarks, copyrights for audio/visual works, right to publicity, existing licenses, contracts, and common law rights.  (*Id.* ¶¶ 13–15).

Disney released the long-awaited *Toy Story 4* in June 2019, featuring a new character alongside the usual cast of toys called Duke Caboom.  (*Id.* ¶ 38).   Duke Caboom rides a Canadian-flag-colored motorcycle and dresses in a white jumpsuit, helmet, and cape with Canadian insignia.  (*Id.* ¶ 41).  Duke Caboom is first introduced in *Toy Story 4* by "Bo Peep" to the film's protagonist, "Woody".  (*Id.* ¶ 40).  Woody and Bo Peep seek to enlist Duke Caboom's help in rescuing a runaway toy name "Forky," who is being held hostage by "Gabby Gabby," the film's antagonist.  (*Id.*).  Woody and Bo Peep need Duke Caboom to jump over an aisle in an antique store to do so, but Duke Caboom has insecurities about his stuntman abilities.  (*Id.* ¶¶ 43–44).

Duke Caboom explains the source of his insecurity by flashing back to a 70s era scene where a child is playing with his Duke Caboom doll while watching the commercial advertisement for the "Duke Caboom Stunt Cycle."  (*Id.* ¶ 45).  However, the toy could not perform as advertised in the commercial and Duke Caboom states, "[the child] threw me away!"  (*Id.* ¶ 46).  Bo Peep cheers Duke Caboom up by reminding him that they "need the only toy who can crash us onto Gabby's cabinet!  Any duke Caboom toy can land.  But you are the only one that can crash the way you do."  (*Id.* ¶ 47).  Later, Woody and Duke board Duke Caboom's motorcycle together in preparation for jumping the antique store's aisle to which Woody successfully lands, but Duke does not.  (*Id.* ¶¶ 48, 50).  In the final stunt, Duke Caboom is encouraged to jump 40 feet across an amusement park and through lights

James C. Mahan
U.S. District Judge

1  fabricated to look like a ring of fire.  (*Id.* ¶ 51).  Once again, Duke Caboom fails and falls
2  onto the floor.  (*Id.*).
3      Disney promoted *Toy Story 4* in Las Vegas and around the world with promotional
4  materials that prominently featured Duke Caboom.  (*Id.* ¶¶ 35–37, 52–55).  Additionally,
5  Disney manufactured and sold Duke Caboom merchandise including the "Disney Pixar Toy
6  Story Stunt Racer Duke Caboom," which featured a Duke Caboom doll in a white jumpsuit
7  with a cape and belt buckle adorned by a red Canadian insignia, and a matching helmet and
8  motorcycle.  (*Id.* ¶¶ 57–59).  The toy also comes with a red "launcher."  (*Id.* ¶ 58).  A similar
9  toy was manufactured by Lego and Fisher-Price.  (*Id.* ¶ 60).  Duke Caboom merchandise is
10  sold online and in retail stores in Nevada.  (*Id.* ¶¶ 62-63).
11      *Toy Story 4* actors, directors, and producers referenced the Evel Knievel inspiration
12  for Duke Caboom in six separate interviews.  (*Id.* ¶¶ 64–74).  Consumers and critics quickly
13  note the similarities between Evel Knievel and Duke Caboom.  (*Id.* ¶¶ 75–89).  K&K
14  provides comparison photos between Evel Knievel, the original stunt cycle, Disney's Duke
15  Caboom, and Disney's merchandise in its amended complaint.  (*Id.* ¶¶ 20, 26–27, 31, 36, 42,
16  45, 58, 60, 89).
17      K&K brings claims under the Lanham Act, 15 U.S.C. § 1125, for false
18  endorsement/false description, trade dress infringement, and trademark dilution.  It also
19  brings Nevada common law claims for trademark infringement/unfair competition, unjust
20  enrichment, and a claim of right to publicity under NRS 597.770.  Disney now moves to
21  dismiss K&K's claims in full under Rule 12(b)(6) for failure to state a claim.  (ECF No. 23).
22  **II.   LEGAL STANDARD**
23      Federal Rule of Civil Procedure 8 requires every complaint to contain a "short and
24  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.
25  Although Rule 8 does not require detailed factual allegations, it does require more than
26  "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."
27  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In other words, a complaint
28  must have *plausible* factual allegations that cover "all the material elements necessary to

**James C. Mahan**
**U.S. District Judge**

1   sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

2   562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp.*

3   *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

4       The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's

5   legal sufficiency on a Rule 12(b)(6) motion to dismiss.  First, the court must accept as true all

6   well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor.

7   *Iqbal*, 556 U.S. at 678–79.  Legal conclusions are not entitled to this assumption of truth.  *Id.*

8   Second, the court must consider whether the well-pleaded factual allegations state a plausible

9   claim for relief.  *Id.* at 679.  A claim is facially plausible when the court can draw a

10   reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 678.

11   When the allegations have not crossed the line from conceivable to plausible, the complaint

12   must be dismissed.  *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216

13   (9th Cir. 2011).

14       If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend

15   unless the deficiencies cannot be cured by amendment.  *DeSoto v. Yellow Freight Sys., Inc.*,

16   957 F.2d 655, 658 (9th Cir. 1992).  Under Rule 15(a), the court should "freely" give leave to

17   amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on

18   the part of the movant, repeated failure to cure deficiencies by amendments . . . undue

19   prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371

20   U.S. 178, 182 (1962).  The court should grant leave to amend "even if no request to amend

21   the pleading was made." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)

22   (internal quotation marks omitted).

23   **III.   DISCUSSION**

24       **A.  Lanham Act Claims and the *Rogers* Test**

25       K&K brings three Lanham Act claims: trade dress infringement, false

26   endorsement/false description, and trademark dilution regarding *Toy Story 4*, and its

27   associated advertisements and merchandise.  (ECF No. 18 ¶¶ 98–121).  Because K&K

28   alleges that Disney has used its protected intellectual property under the Lanham Act in an

**James C. Mahan**
**U.S. District Judge**

expressive work, the *Rogers* test applies.  *E.S.S v. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (adopting the Second Circuit's approach in *Rogers* for the intersection of trademark law and the First Amendment).

K&K argues that the application of the *Rogers* test does not apply to the work in question (ECF No. 27 at 17) but does not proffer sufficient evidence—even when drawing all inferences in its favor—that either a) the film *Toy Story 4* should not be considered an expressive work or b) that the promotional advertising and merchandise related to the film, such as the Duke Caboom character, do not attach to the host expressive work when analyzing a trademark infringement claim within the *Rogers* framework.

It is axiomatic that a film is expressive. It is also well-established that advertising and the sale or licensing of consumer goods related to an expressive work like a film are incorporated into the same *Rogers* test analysis. *Twentieth Century Fox TV v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196–97 (9th Cir. 2017).  Therefore, the *Rogers* test does indeed apply and guides the court's initial analysis of the Lanham Act claims here.

The *Rogers* test also properly applies at the motion to dismiss stage. *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013) (district court properly dismissed Lanham Act claims under the *Rogers* test because plaintiff failed to allege sufficient facts to make out a plausible claim that survives the test); *see also Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 268 (9th Cir. 2018) (affirming dismissal with prejudice of Lanham Act claims as "the evidence was such that no reasonable jury could have found for the plaintiff on either prong of the *Rogers* test"); *Dickinson v. Ryan Seacrest Enterprises, Inc.*, CV 18-2544-GW(JPRX), 2019 WL 3035090, at *7 (C.D. Cal. Mar. 26, 2019), aff'd, Fed. Appx. 110 (9th Cir. 2020) (dismissing Lanham Act claims with prejudice under *Rogers*). In a motion to dismiss, the court "presumes that the facts alleged by the plaintiff are true," *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1309 (9th Cir.1982), but the court is not, however, required to "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

James C. Mahan
U.S. District Judge

The *Rogers* test is a balancing test; the court must balance the "public interest in avoiding consumer confusion" with "the public interest in free expression." *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989). When the public interest in free expression outweighs the public interest in avoiding consumer confusion, the *Rogers* test bars Lanham Act claims from proceeding beyond the pleading stage. *Id*.

The *Rogers* test has two prongs. The first prong requires that to be precluded from a Lanham Act claim, the defendant's use of plaintiff's trademark must be artistically relevant to the underlying work. *Rogers*, 875 F.2d at 1000. If the first prong is satisfied, the Lanham Act is still precluded unless the alleged use explicitly misleads consumers about the source or content of the work. *Id*. at 999.

**1. Artistic Relevance**

For this first prong, the threshold is very low as the artistic relevance "merely must be above zero." *E.S.S v. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008). For example, the alleged infringer in *Rogers* satisfied the artistic relevance prong where its use of the trademark at issue was "not arbitrarily chosen just to exploit the publicity value of [the plaintiff's mark] but instead ha[d] genuine relevance to the film's story." *Rogers*, 875 F.2d at 1001.

In *E.S.S.*, a video game created a "cartoon-style parody of East Los Angeles" which had a virtual strip club called "Pig Pen," a replica of the real-life "Play Pen." 547 F.3d at 1100. The court found artistic relevance as it was reasonable to "recreate a critical mass of the businesses and buildings" in the city to attain the appropriate "look and feel." *Id*. In *Brown v. Electronic Arts Inc.*, another video game case, Hall of Fame football player Jim Brown alleged that EA violated the Lanham Act by using his likeness in its *Madden* games. *Brown*, 724 F.3d at 1238–39. The court held that the "likeness of a great NFL player is artistically relevant to a video game that aims to recreate NFL games." *Id*. at 1247.

The court finds the first prong satisfied here as the alleged allusion to Mr. Knievel bears substantial artistic relevance to the creative work. Duke Caboom is an integral character in the film *Toy Story 4*. His character is integrally related to the plot and is not just

a mere cameo appearance of a motorcycle stuntman. In Disney's words: "The humorous contrast between [Duke Caboom's] outward bravado and inward insecurity add irony and levity to what would otherwise be tense situations in the film's plot." (ECF No. 23 at 16).

This continued a theme from *Toy Story 1*, where Buzz Lightyear had to learn he was just a toy (who could not fly), not a real Space Ranger. *Id.* This artistic relevance clearly rises above the "zero" threshold; any similarity between Evel Knievel and Duke Caboom is artistically relevant to the film. Further, advertisements, promotions, and merchandising for the film prominently feature Duke Caboom (*see* ECF 23-1 at 2 where Duke Caboom is featured on the *Toy Story 4* DVD cover), thus incorporating the additional manifestations of the character under the *Rogers* test. *Empire*, 875 F.3d.

K&K argues that Duke Caboom is not artistically relevant to the film because it does not add "any original material element" to *Toy Story 4* and is used "*solely* to import Evel Knievel…into the film." (ECF No. 27 at 20) (emphasis in original). The court disagrees. Even considering the facts in favor of K&K, the record evinces that Duke Caboom is a crucial part of the storyline. The court is not willing to make the unreasonable inference on the facts that the Duke Caboom's appearance is simply a gratuitous showing of an Evel Knievel-esque motorcycle stuntman.

Because the court finds Duke Caboom's character artistically relevant, the court proceeds to the second prong.

## 2. Explicitly Misleading

This second prong not only relies on the likelihood of consumer confusion, but also "whether there was an 'explicit indication,' 'overt claim,' or 'explicit misstatement' that would" confuse consumers into thinking that the "celebrity is somehow behind the [the film] or that [he] sponsors the product." *Brown*, 724 F.3d at 1245 (quoting *Rogers*, 875 F.2d at 1001). The court must consider the "nature of [Disney's] behavior" to *explicitly* mislead consumers rather than "the impact of the use" on consumers directly. *Brown*, 724 F.3d at 1245–46 (citing to a Sixth Circuit decision in which the court barred a Lanham Act claim against a Tiger Woods commemorative portrayal artist even though survey evidence showed

over sixty percent of participants incorrectly inferred the Tiger Woods artwork was affiliated or connected with Tiger Woods in some way).   Therefore, any analysis of consumer's reactions is misplaced.

Jim Brown argued that the use of his likeness in *Madden* video games alongside a consumer survey were sufficient to show that the video game was explicitly misleading. *Brown*, 724 F.3d at 1245-46.  However, the court ruled that this evidence was insufficient, and the risk of consumer misunderstanding was outweighed by the interest in artistic expression.  *Id*. at 1246.  Additionally, the court in *Empire* found that the TV show *Empire* about a hip-hop music label named "Empire Enterprises," was not explicitly misleading as the show contained no overt or explicit references to the trademark owner of the similarly named record label, Empire Distribution.  *Twentieth Century Fox TV*, 875 F.3d at 1198.

The court finds that *Toy Story 4* does not explicitly attempt to mislead consumers into believing that Mr. Knievel sponsors, endorses, or is associated with the film.  (ECF No. 23 at 17).   Disney created an animated toy character with a different name, appearance, and backstory from Evel Knievel.  Duke Caboom has a "long horseshoe moustache"; Evel Knievel had no facial hair.  (*Id*. at 9).  Duke has "dark, slicked-back hair"; Evel Knievel's hair was "light and curly."  (*Id*.).  Evel Knievel's jumpsuit was an American-themed suit with red, white, and blue stars and a red, white, and blue cape; Duke Caboom's jumpsuit is Canadian-themed with white and red stripes on the arms and legs and a Canadian flag for a cape.  (*Id*.).

Further, the use of a mark alone is not enough to satisfy this prong of the *Rogers* test, otherwise "it would render *Rogers* a nullity." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).  Thus, any evidence of Disney's blithe use of the Evel Knievel mark, unless shown as an explicit use to confuse customers that Mr. Knievel is somehow behind the character Duke Caboom, is not material. K&K has proffered no such evidence here. Therefore, K&K's Lanham Act claims fail under the *Rogers* test and are DISMISSED.

. . .

. . .

James C. Mahan
U.S. District Judge

1          **B.  Right to Publicity under NRS 597.770 1**

2          K&K claims Disney has violated its right to publicity for Evel Knievel intellectual

3    property in two ways: *Toy Story 4* and its corresponding advertisements, and the Duke

4    Caboom action figure.  (ECF No. 18 ¶¶ 90–97).  Nevada's right-to-publicity statute NRS

5    597.790 states that "any commercial use by another of the name, voice, signature,

6    photograph or likeness of a person requires the written consent of that person or is or her

7    successor in interest."  Nev. Rev. Stat. § 597.790.  However, K&K overlooks the statute's

8    exemption of uses that are an "attempt to portray, imitate, simulate, or impersonate a person

9    in a… film."  Nev. Rev. Stat. § 597.790(d).  The statute further exempts uses "in connection

10   with an advertisement or commercial announcement for a use permitted by this subsection."

11   Nev. Rev. Stat. § 597.790(f).  To the extent that Disney's Duke Caboom is an attempt to

12   portray, imitate, simulate, or impersonate Evel Knievel, it is nevertheless permissible in a

13   film and its advertisements.

14         As to the Duke Kaboom action figure, Disney argues that the action figure is a

15   transformative use and is therefore protected by the First Amendment.  (ECF No. 23 at 9–

16   13).

17         Yet Disney does not offer a case where transformative use defeated a right to

18   publicity claim under NRS 597.770 at the pleading stage and the court is not aware of such a

19   case.  When this court is faced with an issue of first impression under Nevada state law, it

20   must use its best judgment to predict how the Nevada Supreme Court would resolve it "using

21   intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises,

22   and restatements as guidance."  *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859,

23   865 (9th Cir. 1996).

24         The caselaw on Nevada's right to publicity statute is scant.  The court will thus follow

25   the lead of the Nevada Supreme Court which often looks to California courts for guidance.

26   *See Salestraq Am., LLC v. Zyskowski*, No. 2:08-cv-01368-LRH-LRL, 2009 WL 1652170, at

27   *3 (D. Nev. June 10, 2009), *aff'd*, 334 F. App'x 125 (9th Cir. 2009) (noting that Nevada has

28   followed California when recognizing new commercial tort theories).  Under California law,

**James C. Mahan**
**U.S. District Judge**

"when an artist is faced with a right of publicity challenge to his or her work, he or she may raise as [an] affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 407 (Cal. 2001).  The transformative use defense is "essentially a balancing test between the First Amendment and the right of publicity." *Winter v. DC Comics*, 69 P.3d 473, 475 (Cal. 2003) (internal quotation marks omitted).  And generally, state right-to-publicity laws implicate broad free speech interests and "a speedy resolution is desirable because protracted litigation may chill the exercise of First Amendment rights." *Kirby v. Sega of Am., Inc.*, 50 Cal. Rptr. 3d 607, 612 (2006).

To that end, the defense is "often properly resolved on summary judgement, or if the complaint includes the work in question, even demurrer." *Winter*, 69 P.3d at 480.  This is consistent with the general principle that while a party may not ordinarily "raise an affirmative defense such as a First Amendment defense at the motion to dismiss stage, a party may do so if the defense is apparent on the face of the complaint." *Mitchell v. Cartoon Network, Inc.*, No. CV 15-5668, 2015 WL 12839135, at *3 (D.N.J. Nov. 20, 2015) (dismissing a New Jersey right-to-publicity claim based on a transformative use defense).

And the court also looks to the Ninth Circuit for guidance in adopting and then applying the California transformative use defense.  *See Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2010); *see also NCAA*, 724 F.3d at 1274.  To that end, the defense is a question of fact that can be established "as a matter of law if no trier of fact could reasonably conclude that the [work is] not transformative." *Hilton*, 599 F.3d at 910.

Taking all this authority into account, the court is persuaded that the Nevada Supreme Court would adopt a transformative use affirmative defense to right-to-publicity claims under NRS 597.770 that could be adjudicated at the pleading stage if the defense is apparent on the face of the complaint.

Now to determine what to consider in deciding whether Disney's use here is in fact transformative, the court will again look to California caselaw and consider (1) if the

celebrity likeness is one of the "raw materials" from which the original work was created from or if the depiction is the very sum and substance of the work in question; (2) whether the work is primarily the defendant's own expression; (4) whether the marketability and economic value of the challenged work derive primarily from the fame of the celebrity depicted; and (5) whether the goal of creating the work is to commercially exploit the fame of the celebrity by creating a conventional portrait supersedes the artist's skill and talent. *NCAA*, 724 F.3d at 1274 (citing *Comedy III*, 21 P.3d at 810).

The court has a few California datapoints to determine if Disney's Duke Caboom action figure is transformative. In *Comedy III*, the California Supreme Court held that "literal, conventional depictions of the Three Stooges" in a charcoal drawing that was then sold on lithographs and t-shirts made "no significant transformative or creative contribution." *Comedy III*, 21 P.3d at 409. Thus, merely merchandising a celebrity's image without their consent is not transformative.

In K*irby*, the California Court of Appeals applied the transformative use defense to a video game with a "Ulala" character—a reporter from outer space—that was allegedly based on the singer Kierin Kirby. *Kirby*, 50 Cal. Rptr. 3d at 612. The appellate court recognized the "similarly shaped eyes and faces, red lips and red or pink hair, brightly-colored, form-fitting clothing" and similar catchphrases. *Id.* at 613. Still, Ulala was "more than a mere likeness or literal depiction of Kirby," because of her "extremely tall, slender computer-generated physique," her "hairstyle and primary costume," her dance moves, and her role as "a space-age reporter in the 25th century," all of which were "unlike any public depiction of Kirby." *Id.* at 616.

Finally, in *NCAA*, a former Arizona State and Nebraska college quarterback alleged that the video game developer EA created an avatar that "replicated [his] physical characteristics in *NCAA Football*" that allowed users to "manipulate the characters in the performance of the same activity for which they are known in real life—playing football," a violation of his right to publicity. *NCAA*, 724 F.3d at 1276. "In the 2005 edition of the game, the virtual starting quarterback for Arizona State [wore] number 9, as did [the

James C. Mahan
U.S. District Judge

plaintiff], and ha[d] the same height, weight, skin tone, hair color, hair style, handedness, home state, play style (pocket passer), visor preference, facial features, and school year as [the plaintiff]." *Id.* at 1272.  The video game did however "omit[] the players' names on their jerseys and assign[] each player a [different] hometown." *Id.* at 1271.  The Ninth Circuit held that EA's use was not transformative under California law because it "literally recreate[d] [the player] in the very setting in which he has achieved renown." *Id.*

With these cases in mind, the court finds that Disney's use of Evel Knievel's likeness contains significant transformative elements such that Disney is entitled to the defense as a matter of law.  Here, the facts are more comparable to *Kirby* than to *Comedy III* or *NCAA*.  Like *Kirby*, Duke Caboom is "reminiscent" of Evel Knievel, but not a literal depiction. *Kirby*, 50 Cal. Rptr. 3d at 613.  The action figure has a different name, different clothing, Canadian rather than American insignia, the addition of a moustache, and a different hair color and style.  Features shared by both the Duke Caboom action figure and Evel Knievel are shared by many stuntmen, such as a jumpsuit, helmet, and motorcycle.  Duke Caboom is not a representation of Evel Knievel simply because he is a stuntman.  Unlike NCAA where the video game avatars looked the exact same outside of their name and hometown, Duke Caboom is not a carbon copy of Evel Knievel minus a few details.  The court finds that by no means is Evel Knievel the sum and substance of the work at issue here; at most, it is one of the "raw materials" from which the Duke Caboom action figure was created.  Furthermore, the Duke Caboom action figure is a representation of Disney's expression in the film and not an attempt to imitate Evel Knievel.  Thus, this court believes that the creative elements of Duke Caboom predominate the action figure.

Moreover, the marketability and economic value of the action figure cannot be said to derive from Evel Knievel.  Distortions of a celebrity figure, "are not, from the celebrity fan's viewpoint, good substitutes for conventional depictions of the celebrity and therefore do not generally threaten markets for celebrity memorabilia that the right of publicity is designed to protect." *Comedy III*, 21 P.3d 797 at 405.  The value comes from the success of *Toy Story 4*.  Thus, Disney's action figure is sufficiently transformative.

James C. Mahan
U.S. District Judge

1    In conclusion, K&K's right to publicity claim is DISMISSED for lack of a legally

2    cognizable claim.

3    **C.  Nevada Common Law Trademark Infringement/Unfair Competition**

4    K&K's Nevada common law claim for trademark infringement and unfair

5    competition rises and falls with its Lanham Act claims.  The elements of a Nevada common

6    law trademark infringement claim are "identical" to the elements of a claim under "section

7    43(a) of the Lanham Act." *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1193 (D.

8    Nev. 2003).  That also means that the *Rogers* test can bar such a state law claim.  *E.S.S.*, 547

9    F.3d at 1101; *MCA Records, Inc.*, 296 F.3d at 902; *IOW, LLC v. Breus*, 425 F. Supp. 3d

10   1175, 1195 (D. Ariz. 2019) ("The Ninth Circuit has made clear that the *Rogers* test applies

11   equally to trademark infringement claims under the Lanham Act, and to state-law unfair

12   competition claims." (cleaned up)).  Because the court dismisses K&K's Lanham Act claims,

13   its coterminous Nevada common law trademark infringement and unfair competition claims

14   are also DISMISSED.

15   **D.  Unjust Enrichment from original complaint**

16   To state a claim for unjust enrichment, the plaintiff must plausibly allege it conferred

17   a benefit on the defendant, the defendant appreciated the benefit, and the defendant's

18   retention of the benefit without payment would be inequitable.  *Certified Fire Prot. Inc. v.*

19   *Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012).  K&K claims that it has conferred a

20   benefit on Disney by maintaining the strength of the Evel Knievel intellectual property and

21   that through its "unauthorized incorporation of the Evel Knievel [i]ntellectual [p]roperty into

22   the character Duke Caboom," Disney has been unjustly enriched.  (ECF No. 18 ¶¶ 128–134).

23   Disney has "accepted and retained the benefits of its unauthorized use" by "obtaining

24   significant profits through the promotion and sale of *Toy Story 4* and the marketing and sale

25   of Duke Caboom merchandise."  (*Id.* ¶ 131).

26   K&K in one breath alleges unauthorized use of its intellectual property but then in

27   another alleges that it conferred a benefit onto Disney.  *See SHC Holdings, LLC v. JP*

28   *Denison, LLC*, No. 2:17-cv-02718-KJD-BNW, 2020 WL 1308322, at *4 (D. Nev. Mar. 19,

James C. Mahan
U.S. District Judge

- 13 -

2020) ("It may be true that Defendant nefariously acquired Plaintiffs intellectual property but there is no evidence that Plaintiff conferred that property on Defendant as required by a claim for unjust enrichment."); s*ee also Chemeon Surface Tech., LLC v. Metalast Intl., Inc.*, 312 F. Supp.3d 944, 956 (D. Nev. 2018).   Putting this apparent contradiction aside, K&K nonetheless fails to state a claim for unauthorized use of its intellectual property. *See supra* sections III.A-C.   Therefore, K&K's unjust enrichment theory necessarily fails and its claim is DISMISSED.

**IV.    K&K's Motion for Leave to File a Second Amended Complaint**

K&K recently submitted a motion for leave to file a second amended complaint based on additional facts that surfaced during discovery. (ECF No. 41).

Although "[t]he court should freely give leave when justice so requires," the court is not obligated to do so.  Fed. R. Civ. P. 15(a)(2).  In particular, the court need not give leave to amend where "it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, "leave to amend may be denied if it appears to be futile or legally insufficient."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986)).

"In determining whether leave to amend is appropriate, the district court considers the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility" of the amendment. See Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).

Here, the court is not prepared to find that amendment would be futile. But it is also unpersuaded that the purported additional facts outlined in K&K's motion to file a second amended complaint rise to a level that would materially alter the foregoing analysis. It may be that additional facts could be pled to state a plausible claim under Nevada right of publicity laws or the Lanham Act, but as it stands—and based on judicial economy—the court elects to dismiss K&K's claims *without prejudice.*

. . .

James C. Mahan
U.S. District Judge

1  **V.      CONCLUSION**

2          Accordingly,

3          IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Disney's motion to

4  dismiss (ECF No. 23) be, and the same hereby is, GRANTED.   K&K's claims are

5  DISMISSED without prejudice.

6          IT IS FURTHER ORDERED that K&K's motion for leave to file a second amended

7  complaint (ECF NO. 41) be, and the same hereby is, DENIED.

8          IT IS FURTHER ORDERED that K&K's motion to seal its motion for leave to file a

9  second amended complaint (ECF No. 39) be, and the same hereby is, DENIED as moot.

10         The clerk shall enter judgment and close the case.

11         DATED September 23, 2021.

12                                                   _____

13                                                   UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge

- 15 -